is here, so we'll dispense with the calling of the calendar, and we'll start with Jefferies Strategic Investments v. Weiss, Case No. 25-914. Mr. Katz. Good morning. Good morning. Good morning, and may it please the Court. Your Honors, this case presents two contract issues, one of contract formation and, as you know, one of contract interpretation. I'd like to start with the first issue. Fundamentally, Your Honors, the District Court Judge, Judge Hellerstein, committed error when he found that the Jefferies parties and Mr. Weiss entered into a binding forbearance agreement in February of 2024 in the context of dueling, prediscovery, summary judgment motions. Fundamentally, Your Honors, the judge's decision was predicated on the notion that Jefferies accepted a counteroffer of forbearance from Mr. Weiss and the White parties based upon a letter from outside litigation counsel on Jefferies' behalf. Your Honors, this letter is not an acceptance. It is — it is a rejection of the Red Line, which is — because it's signed, right? The Red Line is not transmitted like, if you make these changes, we're in. It says, we're signing this and we're removing these two — I think it says two minor sort of immaterial edits. Your Honor, I'll note that that argument wasn't raised below, but either way, it is unavailing for several reasons, primarily because of Jefferies' own contemporaneous description of those terms. In this, what we call the rejection letter — Right. In response, they say those were required terms. Absolutely, Your Honor. But even getting to the substance of those two particular terms, they are fundamentally important to the offer that's being extended because they do several things. Jefferies would — But your email says they're minor changes, and the substantive provisions remain unchanged. Correct, Your Honor. Whether Mr. Dillabaugh meant minor in the sense that they were not extensive, in the sense that they were brief, is one thing. Also — And they're clearly non-substantive, right? Well, what he says is the substantive provisions — I don't know if he was speaking to the other provisions of forbearance that are drafted in the email, but fundamentally, if you look at what Mr. Dillabaugh is saying, he says we don't agree with these terms. Then why is it signed? It's signed because he struck them, meaning we won't agree to them, but we will agree that these terms are taken out of the document, and if there's a change to the date for certain issues of compliance. Jefferies' response tells the tale. Jefferies says these terms were required. Now, it's bedrock law in this circuit in the State of New York that parties have the freedom to contract. And if parties dictate that certain terms are required, more important than material, required, meaning if they're not in there, we don't have a deal, then the Court has to adhere to the bargain that the parties have struck. Moreover, Your Honors, what I might say is these two provisions are key because what they do is they seek to stick Mr. Weiss and the Weiss parties with admissions that would fundamentally alter the landscape of litigation post-forbearance, and that is what the Weiss parties could not agree to. Now, the Jefferies parties have a rejoinder on this in saying —  I didn't follow what you said. Sure. I don't understand what you just said. The terms that the Jefferies parties insisted that the Weiss parties agree to required the Jefferies parties to admit that they misrepresented that they would pay bonuses to employees. They promised they wouldn't do that, and then they had to admit that they did do that. And the rejection letter in the third paragraph is very clear that that is what Jefferies required of the Weiss parties, and the Weiss parties responded, we will not agree to that. Now, I don't find much in the cases that are cited by Jefferies, but one case in particular on this material provisions point is instructive. It's the Hamadi case, a decision from Judge Engelmeyer, where Judge Engelmeyer is very clear that just because something is in a recital or otherwise, that's not really the issue. Materiality — materiality speaks to issues that clearly affect parties' obligations and legal rights. And the reality is that if the Jefferies parties had insisted and the Weiss parties had acquiesced and included those terms, then at the end of the day, the Weiss parties would have been buying themselves a significant lawsuit for fraud or misrepresentation, which would have potentially survived any bankruptcy proceeding. But coming back to this issue of the rejection letter, I've already spoken about the required terms, which we all know what that means. This is — the letter is 150 of the appendix? 153. Correct, Your Honor. And what I want to say here is in the commercial context that this deal was being presented, this is a — as Your Honor pointed out, a contract that one would expect to be signed. In fact, with its revisions, that's how the Weiss parties treated it. And Section 7 of this draft contemplates that Jefferies, as the beneficiary, would not be bound unless Jefferies also signed it and returned it. Now, we understand as a matter of law there are other ways to enter into a contract. But simply, in a $100 million-plus lawsuit that we're dealing with today, with issues at stake like this, it was very easy for Jefferies to simply say, yes, we have a deal, we agree, or to sign it and send it back. And as Your Honors know, in New York, in this circuit, acceptance has to be clear, unambiguous, and unequivocal. It is a very high standard so that commercial parties know exactly what they're dealing with. Well, you're — you all wrote that attach, please find, attach, please find the sign for Barron's agreement. We made two minor changes in the recital because — the recital is because we don't agree with the characterization. The substantive provisions remain unchanged. Thank you for working with us. What's ambiguous about that? What's ambiguous is when you look at these actual items that are being struck, they are significant. They are material. Mr. Dillabaugh, we don't know what he had in his mind, but clearly what the Weiss parties were doing was proposing, if you strike these two clauses and move the date for compliance under the documents, then we have a deal. Jefferies' reaction to that is consistent. Jefferies says, well, you struck required terms. Striking required terms means we don't have a deal. Well, what do we do with the last paragraph of the letter that you call the rejection letter, right, which sort of segues us into acceptance by performance, where they say, all right, well, we're pretty irritated with you for striking these things, but we expect you to abide by the representations. So then they forbore. I'm never really clear about the past tense of forbearing. They didn't sue within the business days that were iterated. And my understanding is that the Weiss parties complied with their disclosure requirements. So it feels like in the moment everybody thought there was a deal. Well, Your Honor, that's not exactly right. Jefferies starts this letter by noting that whatever happens, $115 million is owed by the Weiss parties. So that debt is going to be there regardless. And in the context of the rejection language that I've talked about, the Weiss parties were trying not to get sued. So, of course, they would comply, especially when it's explicitly called out in the letter. Right. So they complied so that, on the other hand, Jefferies would comply by not suing within this very – I don't know why the contract was proposed. It's a very brief window. But this is what you all wanted to do was please forbear for just a couple of days, and in exchange we'll do X. Your Honor, the forbearance in and of itself is not illuminating on the issue of contract acceptance for a couple of reasons. One I mentioned. The other is this was a preexisting obligation. The strategic relationship agreement already allowed the Jefferies parties to request documents like this. So they're just fulfilling that and trying not to be sued and trying to placate somebody that they owe $115 million to. Beyond that, Your Honor, this act of forbearance is akin to silence. Jefferies didn't sue for another three months. So we can't infer that they were on the cusp of suing and they didn't. The law requires an affirmative act of acceptance, and that never occurred, Your Honor. Thank you so much, Mr. Katz. Thank you. Mr. Lerman. May it please the Court, Dan Lerman for Jefferies. The district court correctly held both that there is a binding forbearance agreement and that it included a guarantee of the payment obligations. So with respect to forbearance, the question is whether there was mutual assent as to all material terms. The parties here showed their assent in multiple ways. Weiss signed and executed the agreement without changing any material terms. Jefferies stated that it expected Weiss to comply with its obligations under the contract, and then both parties performed. Weiss performed and Jefferies performed. But on the flip side of what we just talked about with your friend is this fact that you say these were required terms. And so although they say in their email that these are not substantive, your folks then say they're required. And how else do we read required but substantive, material, necessary, and deal-breaking? I will get to that, Your Honor. I will first say that I agree with you that we had acceptance even before this. We made the argument below that Weiss accepted, agreed to the terms of the forbearance agreement by signing it. That's at 997 of our summary judgment papers. At 998, we said that the modified agreement had the exact same performance agreements as the draft that we sent them. So we did make this argument below, and I just wanted to make that clear. And I believe that is all that is required under New York law. There was assent to the material terms, which is what they said. When we said they were required, we were just stating a historical fact. They were in the original offer. We don't dispute that. They changed the offer. That's why we said it was unilaterally modified. But as Your Honor pointed out, we went on to say that we called it an executed agreement in the letter, and we went on to say that we expected them to comply with their obligations under the modified agreement. That's what we said. That shows that we agreed to the terms in the agreement as modified. So that is completely consistent with the existence of a contract, which is then shown by their performance and our performance. Jeffries went on to forbear for the two-day period. There's no dispute. And I find the suggestion that that's not performance hard to believe because, as Your Honor mentioned, that was their sole performance obligation under the contract. Weiss desperately wanted to buy two days of reprieve so that they could pursue a negotiation with a strategic investor that they would hope would resolve the issue once and for all and allow the companies to proceed as a fruitful enterprise that would generate money. That was why they negotiated throughout the night to secure this agreement to forbear. And Jeffries did forbear. Jeffries also filed UCC financing statements, both on the 12th, which is the day the contract was executed, and on the 13th, which is the very next day during the forbearance period. There is no dispute that it is the forbearance agreement itself that gave Jeffries the right to file those because it's what gave Jeffries a security interest, and it expressly stated that Jeffries could file financing statements to perfect its security interest. How much is at stake here? And with the pre-judgment interest, about $113 million, Your Honor. And so that shows that Jeffries proceeded under the contract because that's something that it could not have done but for the existence of a contract. And it shows it's evidence, it's an assent, an agreement to be bound. Weiss also performed. Weiss provided the financial documents on February 12th. It didn't have any obligation to do so. It did that after Jeffries sent the letter. It also made a $3 million payment by one of the entities that didn't have an obligation to do so. That's what they said in their bankruptcy complaint. They said, we made this payment because of the forbearance agreement. So why not sign the revised agreement? I don't know, Your Honor, except that it was not necessary. At that point, Weiss already accepted. It said, here is our signed, executed agreement, minor changes, no material terms. And I would like to explain why they're not material as a matter of law. And they said, thanks for working through the night. We thought we had a deal and we proceeded to act under that deal, including by filing the financing statements after a long night of negotiation. But your friend makes a point that sort of there were some really easy ways to just be clear that it was accepted. And we are talking about, you know, $100 million. This isn't, you know, a $50 deal. So is there a reason it just – you figured it just wasn't necessary? I can't say exactly why it was not signed. I can say that the district court – they made the argument below that a category signature was required. The district court rejected that. They do not challenge that on appeal. So all the material terms is what the district court said were agreed to here, and they went on to perform. And my understanding is that they went on to perform, and they sought to perfect their security interests and file the financing statements and do the other actions under the contract after a late night of negotiations. The terms are not material because although they remove the reference to statements that Weiss allegedly made about the bonus payments, the provision still referenced the bonus payment paid by Weiss on February 8th. So the forbearance agreement still required Jeffries to forbear for bringing any action, quote, with respect to the payment of the bonuses. That is a broad forbearance agreement that is the core obligation under the contract, and Jeffries fulfilled that obligation in its entirety. There is no dispute over that, and I don't think there's any reasonable dispute that that is performance. But Weiss also performed, and Jeffries also showed its assent through its conduct. So we would submit that the court should affirm the decision of the district court on the ground that the contract was formed. On the guarantee, all I will say is just that the plain and ordinary meaning of these terms are broad. They clearly include all the performance obligations. That's what the New York cases show, that a guarantee of performance includes a guarantee of payment. Their reading would require the court to insert terms into the provision that are not there, namely cross-sections and section references, and remove those terms from other parts of the contract that do have those terms. That is not something that courts ordinarily do in New York, and so the district court and, again, the bankruptcy court in agreement correctly held that there was a guarantee of the company's performance obligations. If there are no further questions, I would ask the court to affirm across the board. Thank you. Thank you very much. Mr. Katz. Your Honors, just a couple more points. For one thing, these terms are material. Admitting to fraud, admitting that and giving that to a litigant is a material term. And I think the question still remains, why wasn't there a yes? We don't have a yes. And we have to have a yes in order to do that. We have a signature on a contract that strikes required terms. Isn't that a yes? It's a yes as to what's proposed. It's a counteroffer, Your Honor. The law is clear that when you change terms, when you change material terms, that's a counteroffer. Jeffries calls these terms required. The law is clear. What is your best case for that? The Thornburg case, as well as the Kim case. And in each of those situations, we have a very similar context, where one party proposes changes and the other party, it's maybe, I don't think so. Okay. That's fine. Here we have a no. We have a letter that is rife with disagreement on multiple issues. And what do we have? A few facts that may or may not mean anything. For commercial clarity, parties require that there be an unequivocal, absolute yes. And we don't have that, even though it was so easy to do through outside litigation counsel. On the interpretation question, Your Honors, the notion here that Mr. Weiss backstopped over $100 million in debt in exchange for two days of forbearance for corporate entities taking on that much that he didn't need to take on and wasn't otherwise obligated and which pushed him into a personal bankruptcy doesn't comport with the commercial logistics at issue here and doesn't comply with the Madison Avenue case's interpretation of guarantees, which need to be strictly construed within the overall commercial setting. Where do you think he was personally guaranteed? The agreements to abide by the representations to turn over documents and monitor cash flow. And if you look at them, I'm very glad you... Not forbearance. Go ahead. Not forbearance. He was agreeing that the Jeffries parties would be extending forbearance, but he was guaranteeing that the Weiss parties would provide documents and information. How does a guarantee work? So I understand how a financial guarantee works. If you don't pay the $50, I'll pay the $50. How does a guarantee work when it comes to information disclosure? Well, Mr. Weiss was the principal at the funds, and he had the ability to control documentation that was put out, and they fundamentally needed his cooperation and assurances that going forward there would be controls in place and that he would turn over that information, which is why when you look at the section... Well, how does that work logistically? Let's say the company didn't turn it over, and you say, ha-ha, we have a personal guarantee. What happens? I think you have, Mr. Weiss, in breach of contract for not complying to turn over the documents. That's what agreements mean. And the consequence of that breach is that the forbearance... This is already the end of the first of two days of forbearance, right? And it's 5 p.m. I think we're on the 12th as of Monday, right? Correct, Your Honor. So by 5 p.m. on the 12th, and it's a two-day forbearance, so that means that they agree not to sue by the close of business on Tuesday the 13th. So if the company fails to provide the information by 5 p.m., they then turn to Mr. Weiss personally, and somehow this personal guarantee... Well, we have a breach of contract action against Mr. Weiss for not doing what he agreed to do, which was to ensure that these documents would be turned over and these financial controls would be in place. And if you look at the Section 9 guarantee, it references those agreements. It doesn't reference the Section 3 payment obligations. It's in a completely different section. Well, it doesn't say agreements with a capital A, right? That is true, Your Honor. What I'll also say is the first time that Mr. Weiss was advised that he had personally, in Jeffrey's perspective, guaranteed this was in this lawsuit. There is absolutely no discussion on this point. We believe in the great context of this. It's ambiguous. And this decision was rendered without any discovery. And everything that I've seen in this record indicates this is the first time that we're turning this into a personal guarantee for two days, for a decision which ultimately puts him into a personal bankruptcy. Well, he said, he said when he signed a document that said Weiss unconditionally and irrevocably personally guarantees to Jeffers both the accuracy of the representations and the performance of the agreements of the Weiss parties hereon. That's pretty broad. It is, it is broad. Why is that a guarantee, a personal guarantee of several things including payment? Well, if you look at the signatory portion of the actual agreement that was countersigned and we agree never entered into, the sections that are referenced Mr. Weiss signed onto do not include Section 3, which is the payment guarantee. So when you look at the whole contract, and as courts are obligated to infer the whole contract and form meaning in that context, he wasn't signing onto Section 3. He was signing onto the portion. But what about the performance of the agreements? It's not qualified. It's not qualified in the way you are suggesting to us, is it? Well, Your Honor, if you look at the signature block in terms of which provisions and only those provisions Mr. Weiss is signing onto, he is deliberately not signing onto the Section 3 payment obligations, showing his intent not to be bound to backstop the debt but to assure the performance of those agreements. Agreements are significant. I understand that agreements is not capitalized in this instance. We don't know why that's the case. Perhaps some drafting history would be relevant. I think it would be very relevant, and the parties weren't even permitted to get into that. So it was a premature decision on $115 million for two days of forbearance, which makes absolutely no logical sense for anybody to sign onto. Thank you so much. Thank you, Your Honors. Thank you both.